Red Head Premium Co., Appellant, *v.* Schneider,
Tax Commr., Appellee.
Schoolroy et al., d. b. a. Red Head Premium Co., Appellant, *v.*
Schneider, Tax Commr., Appellee.

[Cite as Red Head Premium Co. v. Schneider, Tax Commr.,
1 Ohio St. 2d 45.]

(Nos. 38638 and 38639—Decided December 29, 1964.)

*Messrs. Critchfield, Critchfield, Critchfield & Johnston* and *Mr. John C. Johnston, Jr.*, for appellants.

*Mr. William B. Saxbe,* attorney general, and *Mr. Edgar L. Lindley,* for appellee.

HERBERT, J. In order to avoid confusion, the facts are set out as they appear in the decision of the Board of Tax Appeals which is applicable to both cases.

"* * * the premium company, during the audit period here involved conducted a premium merchandise business wherein it sold its services and premium coupons * * * to certain retail businesses, which retail businesses, in turn, distributed to its own customers the premium coupons when their customers purchased goods or services from them. The customer of the retail business could then present the coupons to the premium company in exchange for items of merchandise which the premium company had listed in its catalog * * *. The premium company maintained its only office and warehouse at Wooster, Ohio, and, during the audit period, its services were provided and its coupons were sold to and distributed by three oil companies and two laundries, which are the retail businesses hereinafter referred to.

"* * * the premium company sold its coupons to the retailers for a 'price' of 65 cents per hundred to the oil companies and 75 cents per hundred to the laundries and this was the only charge made for the premium company's services and coupons. Along with the coupons the premium company delivered to the oil companies and laundries the necessary catalogs, order blanks, envelopes and other items to be used by the oil companies' and laundries' customers when they sent in the coupons in exchange for merchandise. The evidence indicates that the great bulk of the redemption of the coupons for catalog merchandise was done by United States mail.

"In redeeming coupons and exchanging catalog merchandise for coupons the premium company did not collect sales tax from the consumer * * *. Instead, it kept a record of the number of coupons received in redemption and exchange and a record of the retailer who distributed them. At the end of each month the premium company would compute the gross amount of its exchanges and redemptions in money by multiply-

ing the number of coupons redeemed by the factor $.0065 or $.0075, as applicable, and sales tax stamps were cancelled in the amounts so determined and a report was made to the state of Ohio at the close of the semiannual accounting period as required by law.

"Although it did not advertise this fact, the premium company also made cash sales on merchandise appearing in its catalog during the audit period and * * * a purchaser or consumer buying for cash at the premium company's offices in Wooster, Ohio, would be charged a 'price' determined by the number of coupons stated in the catalog, as being required for any item, less 33-1/3%. Sales tax was then computed and charged on this 'price' and, as to the sales tax on cash sales, there is no dispute between the parties.

" * * *

"As before noted the premium company issued a catalog * * * which stated therein the number of premium coupons required for the redemption of each item listed. The reference was to the number of coupons required and not to any particular dollar amount or 'price.' On the inside cover of appellant's exhibit 1 under the heading 'Foreword' appears the following language:

" '*Articles are priced in terms of coupons. Each coupon has a retail value of one cent or more*. The redemption value is in terms of single unit coupons. Each green coupon is a single unit. Each yellow coupon is five units.'

"Each green coupon has upon its face the following:

" ' Cash value—1 mill. Premium value—1 cent.'

"Each yellow coupon has upon its face the following:

" 'Cash value—5 mills. Premium value—5 cents.'

"In determining the number of coupons which would be required in the redemption of any item offered in the catalog, the premium company applied a multiplication factor from 1.8 to 2.4 times the cost to it of that item. The factor applied was selected after consideration of packaging, handling, popularity, obsolescence and similar factors.

"The premium company operated from a warehouse which was located on a back street in Wooster, Ohio, and it rendered no services in the form of display merchandise. It made no

credit sales and there were no returns and no deliveries, except the delivery of merchandise made by the premium company to the oil companies and laundries.

"From the testimony and evidence it appears that items of tangible personal property similar to the items shown in the premium company's catalog could be purchased from other retail outlets at cash prices which varied. For example, a coffeepot which appeared in the catalog for 1,895 coupons could be purchased from the appellant at $12.63 in cash and from other retailers at cash prices ranging from a low of $11.95 to $15.95. However, in this connection it might be observed that cash merchandising would not require the additional costs involved in the instant case where catalogs were published, coupons were issued, sold, distributed and collected, and merchandise exchanged therefor which had to be selected, packaged and delivered to a customer of the appellant.

"The price applied to an item in the cash and carry method of merchandising is, and would be expected to be, less than the price applied to an item where the sale required and entailed considerable additional expense in the performance and consummation thereof."

It was further established in evidence that, from appellants' experience, 25% of the coupons distributed were never offered for redemption.

The parties agree that the transactions here under consideration constituted sales within the purview of Section 5739.01 of the Revised Code. They differ as to the method of computing the tax.

In subparagraph (H) of this section it is said:

" 'Price' means the aggregate value in money of any thing paid or delivered, or promised to be paid or delivered, in the complete performance of a retail sale, without any deduction on account of the cost of the property sold, cost of materials used, labor or service cost, interest or discount paid or allowed after the sale is consummated, *or any other expense.* * * *." (Emphasis added.)

The price base for assessment of the sales tax as determined by the Tax Commissioner appears to be supported by the appellants. In their catalog, they list the price, for example,

of the coffee percolator at 1,895 coupons. In the foreword of the catalog appears this language:

"Articles are priced in terms of coupons. Each coupon has a retail value of one cent or more."

It follows that the coupon price of the percolator converted into money at one cent per coupon is $18.95. This was the value used by the Tax Commissioner as a sales tax price base for assessment purposes.

That sum, *i. e.*, $18.95, is readily reconciled with the total "aggregate" sum of cost items enumerated in Section 5739.01 of the Revised Code. The manufacturer's cost of an article of merchandise added to the other costs when sold at a redemption sale—such as handling, packaging, securing outlets for coupon distribution, preparing, printing and publishing catalogs, rental, depreciation, clerk, salesmen, supervision and office equipment, including furniture, calculating machines, typewriters, adding machines, postage and other overhead and a reasonable profit, if possible—would reasonably total the amount of the sale price listed in the catalog and in terms of money would justify the sales tax base upon which the Tax Commissoner made the assessments.

The decisions of the Board of Tax Appeals approving the sales tax assessments levied by the Tax Commissioner are neither unreasonable nor unlawful and are affirmed.

*Decisions affirmed.*

ZIMMERMAN, MATTHIAS and O'NEILL, JJ., concur.
GIBSON, J., concurs in the syllabus and judgment.
TAFT, C. J., and GRIFFITH, J., dissent.

TAFT, C. J., dissenting. In quoting from the decision of the Board of Tax Appeals, the majority opinion includes the finding of fact that "the premium company also made cash sales on merchandise appearing in its catalog during the audit period" at "a 'price' determined by the number of coupons stated in the catalog, as being required for any item, less 33-1/3%." However, the majority opinion omits the finding of fact that "these strictly cash sales total $39,939," a substan-

tial amount, and further omits the following significant findings:

"In the event a customer or consumer held coupons insufficient in number to permit him to acquire a specific item he was allowed to make up the difference in cash. The amount of cash so required was the difference between the amount of coupons presented and the number required, discounted by 33-1/3%."

It is apparent, therefore, from the findings of fact by the Board of Tax Appeals and the undisputed evidence, that every item in appellants' warehouse had a coupon "price" which was easily translated into a cash price by an invariable formula. That cash price was always 66-2/3% of the coupon price in cents.

If, as is conceded, the price is to be determined at the time that the coupons are delivered to appellants for an item of merchandise and if, as the statute (Section 5739.01 (H), Revised Code) specifies, " 'price' means the aggregate value in money of anything paid or delivered or promised to be paid or delivered" (here, only the coupons), I cannot comprehend how the price for sales tax purposes can be more than 66-2/3% of the coupon price converted into cents.

GRIFFITH, J., concurs in the foregoing dissenting opinion.